UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 0:18cv60693

Yazan Saleh,
individually and on behalf of all
others similarly situated,

Plaintiff,                                                    **CLASS ACTION COMPLAINT**

v.

Look International, Inc., d/b/a/ Sin Pin, a Florida
Corporation, SIN PIN, Inc., a Florida
Corporation, Assad Ibrahim, a natural parson and Majd
Ibrahim, a natural parson,

Defendants.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL
INJUNCTIVE RELIEF SOUGHT**

Plaintiff, Yazan Saleh, brings this action against Defendants, Look International, Inc. d/b/a Sin Pin ("LIC"), SIN PIN, Inc. (SIN PIN), Majd Ibrahim ("Majd") and Assad Ibrahim ("Assad") (collectively "Defendants") and alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1.      This is an action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"). Defendant LIC and SIN PIN are both telecommunications company that sell "minutes" to consumers seeking to place international calls at a discounted rate.  LIC holds itself out  being "the easiest and cheapest way to make domestic and international calls to anywhere in the

world."[1]

2. In efforts to increase the sales of their "minutes" from the public at large, Defendants made consumers' cellular phones constantly ring by sending tens of thousands of illegal marketing text messages which solicited several types of discounts and promotions for future purchases of "minutes" without first obtaining express written consent to send such marketing text messages as required to do so under the TCPA.

3. These messages were sent using mass-automated technology either directly or through a third-party company hired by Defendants to send marketing text messages on Defendants' behalf *en masse*.

4. In sum, Defendants knowingly and willfully violated the TCPA, causing injuries to Plaintiff, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

5. Through this action, Plaintiff seeks injunctive relief to halt Defendants' illegal conduct. Plaintiff also seeks statutory damages and any other available legal or equitable remedies resulting from the illegal actions of Defendants.

## JURISDICTION AND VENUE

6. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a nationwide class, which will result in at least one class member belonging to a different state than Defendants. Plaintiff seeks up to $1,500.00 in damages for each call (text message) in violation of the TCPA, which, when aggregated among a proposed class numbering in the thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

---

[1] https://www.sinpin.com/home/support

7. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants are deemed to reside in any judicial district in which they are subject to the court's personal jurisdiction, and because Defendants provide and market their products within this district thereby establishing sufficient contacts to subject them to personal jurisdiction. Further, Defendants' tortious conduct against Plaintiff occurred within this district.

## PARTIES

8. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Broward County, Florida.

9. Defendant LIC is a Florida Corporation whose principal office is located in Stuart, Florida.

10. Defendant SIN PIN is a Florida Corporation whose principal office is located in Stuart, Florida.

11. Defendant Majd is a natural person and president of SIN PIN as well as a director of LIC. Majd is a resident of Florida.

12. Defendant Assad is a natural person and president of LIC. Assad is a resident of Florida.

13. Defendants Assad and Majd both market and control all of LIC's and SIN PIN's conduct in the United States including the transmissions of the violating text messages at issue in this case.

## THE TCPA

14. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

15. A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph. 47 U.S.C. § 227(b)(3).

16. The element of "willfulness" is demonstrated by evidence that the defendant acted deliberately or intentionally rather than merely through negligence.

17. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

18. The TCPA exists to prevent communications like the ones described within this Complaint. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

19. In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

20. The Federal Communications Commission ("FCC") is empowered to issue rules and

regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

21. With respect to telemarketing, 47 C.F.R. § 64.1200(c) provides:

No person or entity shall initiate any telephone solicitation to:

(1) Any residential telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location), or

(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator.

22. In 2012, the FCC issued an order further restricting automated telemarketing calls, requiring "prior express <u>written</u> consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012)(emphasis supplied).

23. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent . . . and [the plaintiff] having received the information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

24. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

25. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

26. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii) & 47 C.F.R. § 64.1200(f)(12)).

27. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id*.

28. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

29. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *In the Matter of Rules & Regulations Implementing the*

*Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

30. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

31. As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

## BACKGROUND FACTS

32. In efforts to increase the sales of their "minutes" to individuals in the United States, Defendants made consumers' cellular phones constantly ring by sending tens of thousands of illegal marketing text messages which solicited several types of discounts and promotions for future purchases of "minutes" without first obtaining express written consent to send such marketing text messages as required to do so under the TCPA.

33. Plaintiff is receiving these marketing text messages to his cellular telephone number, ending in 2247 (the "2247 Number").

34. By way of examples, such automatic transmissions, received on September 16, 2016 through September 20, 2016, caused the following text messages to be received on Plaintiff's cellular telephone number. See below:



35. The website promoted in the text messages depicted above solicits the recipient to purchase Defendants' services.

36. Defendants' text messages constitute telemarketing because they encourage the future purchase of Defendants' services by individuals such as Plaintiff.

37. Plaintiff received the subject text messages within this judicial district and, therefore, Defendants violation of the TCPA occurred within this district.

38. At no point in time did Plaintiff provide Defendants with his express written consent to be contacted by text messages for marketing purposes using an ATDS.

39. Plaintiff is the subscriber and sole user of the 2247 Number.

40. At all times relevant herein, Plaintiff's cellular telephone number is listed on the national do-not-call registry of persons who do not wish to receive telephone solicitations.

41. Some, if not all of the messages originated from the phone number or short-code "91011."

42. The impersonal and generic nature of Defendants' text messages demonstrates that Defendants utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements

written in an impersonal manner and sent from short code); *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

43. Specifically, upon information and belief, Defendants, directly, or through a third-party telemarketer, utilized a combination of hardware and software systems to send the text messages at issue in this case. The systems utilized by Defendants have the capacity or present ability to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

44. Defendants' unsolicited text messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to his daily life. *See Patriotic Veterans, Inc. v. Zoeller*, No. 16-2059, 2017 WL 25482, at *2 (7th Cir. Jan. 3, 2017) ("Every call uses some of the phone owner's time and mental energy, both of which are precious."). Plaintiff received the subject text message while he was at work, causing him to stop his work activities to check his phone.

45. As outlined above, upon information and belief, Defendants may have employed a third-party company to send the marketing text messages in question to Plaintiff and, as such, are vicariously liable for the TCPA violations arising from said text messages.

*Vicarious Liability*

46. Under the TCPA, as interpreted by the FCC, a person or entity can be liable for calls made on its behalf even if that person or entity did not directly dial those calls.

47. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See Rules and

Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

48.     In 2008, the FCC reiterated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 Request of ACA International for Clarification and Declaratory Ruling, CG 02-278, 23 F.C.C.R. 559 at ¶10 (Jan. 4, 2008) (specifically recognizing "on behalf of" liability in the context of a robocall sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)) .

49.     In May of 2013, the FCC reinforced this issue. *See* In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, --- FCC Rcd. --- (F.C.C. May 9, 2013) (hereinafter "2013 FCC Ruling Order") (clarifying that "a seller … may be vicariously liable under federal common law agency-related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services."). The FCC rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id*. n.107.

50.     The 2013 FCC Order further explained:

"To provide guidance in this area, we find that the following are illustrative examples of evidence that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations. For example, apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's

telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. At a minimum, evidence of these kinds of relationships – which consumers may acquire through discovery, if they are not independently privy to such information – should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent.

"[ ] In sum, under our current rules and administrative precedent interpreting and implementing sections 227(b) and 227(c), we do not think that an action taken for the benefit of a seller by a third-party retailer, without more, is sufficient to trigger the liability of a seller under section either section 227(c) or section 227(b). However, we see no reason that a seller should not be liable under those provisions for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services. In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised. In the case of either actions to enforce section 227(b) or actions to enforce do-not-call restrictions under section 227(c), we stress that nothing in this order requires a consumer to provide proof – at the time it files its complaint – that the seller should be held vicariously liable for the offending call."

Id. at ¶¶ 46-47).

51. Accordingly, it is unambiguously clear that an entity can be liable under the TCPA for a call made on its behalf even if the entity or individual did not directly place the call under a number of theories, including vicarious liability. Under those circumstances, both Defendants are properly deemed to have initiated the call through the person or entity that actually placed the calls.

### *Willful or Knowing*

52. If the court finds that a defendant willfully or knowingly violated the TCPA, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of 47 U.S.C. § 227(b)(3).

### *Proposed Class*

53. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

54. Plaintiff brings this case on behalf of the following Classes:

> ***The "Telemarketing Class"*** All persons within the United States who, within the four years prior to the filing of this Complaint, was sent a marketing or promotional text message made through the use of any automatic telephone dialing system, from Defendants or any of their subsidiaries, or anyone on Defendants' or their subsidiaries' behalf, to said person's cellular telephone number, not for emergency purpose and without the recipient's prior express written consent.

> ***The "Do Not Call Class"*** All persons within the United States who, within the four years prior to the filing of this Complaint, was sent, from Defendants or any of their subsidiaries, or anyone on Defendants' or their subsidiaries' behalf more than one telephone call to said person's cellular telephone number within any 12-month period, by or on behalf of the same entity, without their prior express consent and to which they object, while listed on the national Do Not Call Registry.

55. Plaintiff is a member of both classes.

56. Defendants and their employees or agents, Plaintiff's attorneys and their employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death, and/or emotional distress are excluded from the Classes. Plaintiff does not know the number of members in the Classes, but believes the Class members number in the thousands, if not more.

*Numerosity*

57. Upon information and belief, Defendants have placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of each Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

58. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' call records.

*Common Questions of Law and Fact*

59. There are numerous questions of law and fact common to each Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

   a) Whether Defendants made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;

   b) Whether any of such calls were made to persons whose cellular telephone number is listed on the national do-not-call registry of persons who do not wish to receive telephone solicitations.

   c) Whether Defendants can meet their burden of showing that they obtained prior express written consent to make such calls;

   d) Whether Defendants conduct was knowing and willful;

   e) Whether Defendants are liable for damages, and the amount of such damages; and

   f) Whether Defendants should be enjoined from such conduct in the future.

60. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiffs and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

*Typicality*

61. Plaintiff's claims are typical of the claims of the Class members, as they are all based

on the same factual and legal theories.

### *Protecting the Interests of the Class Members*

62.     Plaintiff is a representative who will fully and adequately assert and protect the interests of both Classes, and has retained competent counsel to assist in doing so. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

### *Superiority*

63.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes are economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each Class member resulting from Defendants wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

64.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
## Violation of the TCPA, 47 U.S.C. § 227(b)

65.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

66. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

67. "Automatic telephone dialing system" refers to any equipment that has the "capacity to dial numbers without human intervention." *See, e.g., Hicks v. Client Servs., Inc.*, No. 07-61822, 2009 WL 2365637, at *4 (S.D. Fla. June 9, 2009) (citing FCC, In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA International for Clarification and Declaratory Ruling, 07–232, ¶ 12, n.23 (2007)).

68. Defendants – or third parties directed by Defendants– used equipment having the capacity to dial numbers without human intervention to make marketing telephone calls to the cellular telephones of Plaintiff.

69. These calls were made without regard to whether Defendants had first obtained express written consent to make such calls. In fact, Defendants did not have prior express written consent to call the cell phones of Plaintiff when the subject calls were made.

70. Defendants therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make marketing telephone calls to the cell phones of Plaintiff without his prior express written consent.

71. All Defendants are directly, jointly, or vicariously liable for each such violation of the TCPA.

72. As a result of Defendants conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff was harmed and is entitled to a minimum of $500.00 in damages for each violation. Plaintiff is also entitled to an injunction against future calls.

## COUNT II
## Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)

73. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

74. At all times relevant, Defendant knew or should have known that their conduct as alleged herein violated the TCPA.

75. Defendants knew that they did not have prior express written consent to send these text messages.

76. Because Defendants knew or should have known that Plaintiff had not given prior express consent to receive its autodialed calls to their cellular telephones, the Court should treble the amount of statutory damages available to Plaintiff pursuant to § 227(b)(3) of the TCPA.

77. All Defendants are directly, jointly, or vicariously liable for each such violation of the TCPA.

78. As a result of Defendants violations, Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT III
## Violation of 47 C.F.R. §64.1200(c)

79. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

80. Defendants – or third parties directed by Defendants, for telemarketing purposes, placed multiple automated text messages to persons whose cellular telephone numbers are listed on the national do-not-call registry of persons who do not wish to receive telephone solicitation.

81.     Plaintiff received more than one telephone call within any 12-month period, by or on behalf of the Defendants, without their prior express consent and to which they object.

82.     Defendants therefore, violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to person who have registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations.

83.     All Defendants are directly, jointly, or vicariously liable for each such violation of the TCPA.

84.     As a result of Defendants conduct and pursuant to 47 C.F.R. 64.1200(c), Plaintiff was harmed and is entitled to a minimum of $500.00 in damages for each violation. Plaintiff is also entitled to an injunction against future calls.

**WHEREFORE**, Plaintiff prays for the following relief:

a) A declaration that Defendant practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227 and the applicable rules promulgated thereunder;

b) A declaration that Defendants violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 and the applicable rules promulgated thereunder were willful and knowing;

c) An injunction prohibiting Defendants from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express consent of the called party;

d) An injunction prohibiting Defendants from making calls and text messages to numbers assigned to the national do not call registry

e) An award of actual, statutory damages, and/or trebled statutory damages; and

f) Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: March 31, 2018

Respectfully submitted,

By: /s/ *Jibrael S. Hindi*
Jibrael S. Hindi, Esq.
THE LAW OFFICE OF JIBRAEL S. HINDI, PLLC.
110 SE 6th Street
Ft. Lauderdale, FL 33301
Tel: (954) 907-1136
Fax: (855) 529-9540
jibrael@jibraellaw.com